Kirkland et. al. v. Kolodziej et. al., No. 438-9-12 Wmcv (Wesley, J. Feb. 28, 2014).

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
SUPERIOR COURT

| | |
|---|---|
| **BRUCE KIRKLAND**<br>**and GORDON KIRKLAND**<br>　　**Plaintiffs,**<br><br>　**v.**<br><br>**JAMES KOLODZIEJ**<br>**and BARBARA KOLODZIEJ**<br>　　**Defendants.** | **Windham Unit, Civil Division**<br>**Docket No. 438-9-12 Wmcv** |

OPINION & ORDER
DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

On September 11, 2012, Plaintiffs brought this action, seeking to quiet title, seeking injunctive relief, and seeking damages for nuisance against Defendants. Plaintiffs are represented by Attorney Thomas W. Costello. Defendants are represented by Attorneys Christopher M. Rundle and Amanda Rundle.

After the Court's Sept. 24, 2013, ruling on Defendants' Motion for Judgment on the Pleadings, to which reference is made for additional exposition of Plaintiff's claims, the claims for injunctive relief and nuisance remain. On December 9, 2013, Defendants filed a motion for partial summary judgment. Plaintiffs filed a cross-motion for partial summary judgment also on December 9, 2013.

DISCUSSION

The summary judgment record reveals the following circumstances. The properties relevant to this matter are located in Rockingham, Vermont. Defendants own land west of Plaintiffs' land. Defendants' land is adjacent to Gowing Road, including a disputed location at which Plaintiffs assert that Gowing Road intersects Petty Road. Plaintiffs claim that Defendants have obstructed both Gowing Road and Petty Road, thus denying Plaintiffs access along the roadway.[1]

Defendants seek partial summary judgment in their favor on claims that they obstructed Gowing Road, and also seek judgment on claims relating to these critical factual and legal issues: the length of Petty Road, whether it meets Gowing Road, and whether they can lawfully be made liable for obstructing the roadway such that one cannot travel from Gowing Road to Petty Road. Specifically, Defendants assert that Petty Road is just 2,500 feet long, running roughly west from the Springfield town line, and that Petty Road cannot intersect with Gowing Road,

---

[1] Though not directly material to the determination of the cross-motions for summary judgment, it appears that Plaintiffs also have access to their property by Gowing Road, along a route which does not require transit over Defendants' property.

because it stops short of meeting Gowing Road, which is some 5,000 feet west from the town line. Thus, Defendants argue, they cannot have obstructed the portion of Petty Road on their property as it does not cross their property on its way to a junction with Gowing Road.[2]

Plaintiffs assert that from the junction of Gowing Road and Petty Road, which they claim exists, Petty Road extends easterly over Defendants' land, continuing onto land owned by the father of one Defendant, continuing along the southern edge of Plaintiff's land, and then over Lot 6, Range 1 to a terminus where the northwestern portion of Lot 7 Range 1 meets the Springfield town line. Plaintiffs assert that both the historical record and the present physical facts demonstrate that Petty Road is longer than Defendants claim. Plaintiffs maintain that the path of travel from Gowing Road to, or along, Petty Road across Defendants' land has been in use continuously from at least 1843 to 2007, when Defendants took steps to block Petty Road.

### *Cross-Motions re The Dimensions of Petty Road*

The central issues in this matter are the length of Petty Road and its nature as a public way across Defendants' land up to an intersection with Gowing Road. Both Plaintiffs and Defendants cite to the historical record; however, that record contains apparent ambiguities.

Defendants point to records, specifically Book 6, Page 189, showing that Petty Road was formally laid out originally in 1821. According to Defendants, this document makes it plain that Petty Road does not intersect with Gowing Road, as it was too short to do so as laid out at that time. Defendants claim that Petty Road then was discontinued on November 16, 1842, and re-laid out as a pent road on March 4, 1843. By Defendants' assessment of the records, because it was re-laid out and not re-surveyed, Petty Road followed the survey of the former road, and its dimensions did not change when it was re-laid out. Defendants assert those dimensions, based upon the Town of Rockingham's records at Book 6, Page 189, indicate the road extended westward from the Springfield line approximately 2,500 feet. As Gowing Road is approximately 5,000 feet from the Springfield line, Defendants maintain the two roads cannot intersect.

Defendants further argue that there is no Town of Rockingham record demonstrating an intersection, and they dismiss as hearsay Plaintiffs' documentary evidence of alternative dimensions for Petty Road, discussed below. Because, Defendants say, Plaintiffs cannot demonstrate that Petty Road was *formally laid out* in the dimensions they claim, and because, Defendants assert, only a document demonstrating such formalities associated with Plaintiffs' claims would prove that the roads intersect, Plaintiffs cannot prove that Petty Road and Gowing Road intersect. Defendants argue, "…even in the light most favorable to the Plaintiffs, the admissible evidence, at most, demonstrates people <u>may have thought</u> the Petty Road intersected with the Gowing Road notwithstanding that the Rockingham Town Records demonstrate that the two roads never intersected." Defendants cite *Austin v. Middlesex,* 2009 VT 102, 186 Vt. 629, for the proposition that only evidence that a town complied with the laws for laying out a highway can prove a highway's existence within given dimensions. As discussed *infra*, the Court concludes this is an overbroad application of *Austin*.

---

[2] Defendants' claim that there is no evidence they have obstructed Gowing Road is addressed separately below.

Plaintiffs concede that the origins of Petty Road as a town highway are unclear, and acknowledge that they have been unable to find documentation of the original laying out of the road which includes the disputed section. They assert, however, that it was established prior to 1806 because there are 1806 documents referring to "the road leading to Solomon Petty's." They also acknowledge the formal laying out of Petty road in 1821, but assert that this accomplished the laying out of the final 2,502 feet of the road, the easternmost portion adjacent to the Springfield line. This is the portion of Petty Road that Defendants acknowledge as a pent road and class 4 town highway. Plaintiffs argue that at the time this portion was formally laid out, the presently disputed section already existed.

Both sides acknowledge that in November 1842, the town's selectmen discontinued a portion of Petty Road, although they disagree as to where that portion was located. Relying on the correspondence between descriptions of the affected properties in the records of the selectmen's acts, as compared with deed descriptions of those properties, Plaintiffs assert that this was the portion largely coinciding with the portion presently in dispute. Plaintiffs argue based on Rockingham property records that a few months later, pursuant to a petition before them, the selectmen again examined the section of road they had discontinued and laid out a pent road along the previously discontinued route. As described, the pent road ran along the center line of survey of the portion of the old road that had been discontinued three months before. The records indicate that it began at the intersection of Petty Road with "the Mason Road so-called" and proceeded through the Petty farm to the Springfield line. According to Plaintiffs, the key to determining where Petty Road terminates on the western end of the portion established as a pent road is determining the location of "the Mason Road."

Plaintiffs assert that Mason Road in 1842 and 1843 was the road now known as Gowing Road. If accepted, this fact would demonstrate a historic junction between Gowing Road and Petty Road. Plaintiffs claim that the pent road established in 1843 ran southeasterly and northeasterly from the present Gowing Road along the route that crossed Defendants' property until they obstructed it. In support of these assertions, Plaintiffs cite a series of deeds from the relevant period of time which reference the road, which refer to "Gill Gowing" and "Mason Road" interchangeably, and which reference the pent road established in 1843. Plaintiffs also argue that the physical features of the land in question support their position. Plaintiffs, who own a parcel in the relevant area, assert that from 1978 until 2007, they travelled Petty Road from Gowing Road to their land. This ended in 2007 when, Plaintiffs assert, Defendants blocked Petty Road.

As there is evidence for both positions in this case, this is not a matter on which summary judgment is appropriate. See *Madowitz v. Woods at Killington Owners' Ass'n*, 2010 VT 37, ¶ 9, 188 Vt. 197, quoting *Bacon v. Lascelles*, 165 Vt. 214, 218 (1996) ("summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact"). Defendants argue that Plaintiffs lack any evidence for their position that Petty Road exists in the dimensions they claim, without which their position fails as a matter of law. *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 118 A. 888 (1981). Defendants particularly emphasize Plaintiffs' inability to locate the survey to which reference is made in the 1843 rededication of Petty Road. Without such survey, according to Defendants, the Court must conclude that the 1843 and 1843 discontinuation and rededication of Petty Road involved the 2,502 feet laid out in

1821 running west from the Springfield town line. Certainly, there are inferences from the record to support this argument.

Nevertheless, Defendants' argument fails to take into account support for Plaintiffs' position existing in the written record, in the form of the deeds and references to Mason Road, further support in the physical layout of the roadways prior to 2007, and evidence of the roadways' customary use. See *Gore v. Blanchard*, 96 Vt. 234 (1922) (discussing customary use as evidence of dedication of a road to the public). While this evidence can not be found to indisputably establish Plaintiffs' claims for the dimensions of Petty Road, it raises significant issues of material fact as to those dimensions so as to preclude summary judgment based on Defendants' analysis. Given that *Blanchard* instructs that customary use may substitute for proof that a road was formally dedicated to the public, it follows that customary use should also be able to substitute for proof of other formalities surrounding the laying out of a road. *Blanchard*, 118 A. at 890 ("A dedication is the setting apart of land for the public use. It may be express or implied. It is not claimed that there was an express dedication of the way in controversy, but it is claimed that the evidence of user and the conduct and testimony of Gardner tended to show an implied dedication. … Long acquiescence in user by the public, under certain circumstances, is evidence of an intent to dedicate land to public use"); *see also, Felch v. Gilman*, 22 Vt. 114 (1849)(acquiescence by landowner in public use precluded later assertion that highway was laid out with insufficient formalities).

In order to be entitled to summary judgment, "[a] party seeking summary judgment must point to particular parts of the record to support the assertion that a fact can or cannot be genuinely disputed," *State Farm Mut. Auto. Ins. Co. v. Colby*, 2013 VT 80, ¶ 8. Since there is some evidence for each party's position with respect to the Petty Road's dimensions, summary judgment will not be granted on the claims for injunctive relief and damages for obstructing Petty Road, as these hinge upon Petty Road's dimensions.

Despite the Defendants' urging, *Austin v. Middlesex*, does not compel the opposite conclusion. Defendants argue it is dispositive of the claim because, while there may be conflicts in the historical record regarding Petty Road and its length, there is no documentary evidence that the road was ever formally laid out in the dimensions claimed by Plaintiffs. By Defendants' reading, *Austin* stands for the proposition that a formal laying out in certain dimensions is required in order for the road to exist in those dimensions. However, the ruling does not impose such rigid limits, certainly as regards facts that are distinguishable. While in *Austin*, the town's failure to follow the requirements for formally laying out a road was fatal to its claim that a public road existed on the plaintiffs' land, *id.*, ¶¶ 9–10, the differences between that case and the present one are critical. In *Austin*, given the nature of its claim, the town had to show it had complied with the procedural requirements for a taking. *Id*, ¶ 5. Here, Plaintiff maintains that Petty Road is longer than the section shown in the 1821 survey, that another survey likely existed as referenced in the 1843 rededication, and that, in any event, the location of Petty Road across Defendants' land to Gowing Road has long been established by acquiescence, an issue not presented by *Austin*. See, *Town of Ludlow v. Watson,* 153 Vt. 437, 441-442 (1990)(where road as used was 1924 feet longer, and otherwise did not conform to the 1819 survey showing its

dedication, error for trial court to enter directed verdict for landowner in Town's action for injunctive relief to clear obstructions from its right of way).

Indeed, as discussed above, there is evidence that the road was established prior to 1806, even if formalities were not observed; that the portion in question was discontinued and re-established as a pent road in 1842 and 1843; and that the disputed portion has been in public use continuously until Defendants obstructed it. This sequence of events, if supported by a preponderance of the evidence, would justify the conclusion that Plaintiffs' predecessors and the public had acquired rights by dedication and acquiescence to use the road and traverse the land now owned by Defendants. *Id.; see also*, *Higgins v. Ringwig*, 128 Vt. 534, 538–539 (1970) ("The findings support the inference that the roadway had been used as an easement by the plaintiffs' predecessors in title for many years. There is no evidence that such use was only permissive or that such permission was ever revoked. From this a presumption arises that such use was under a claim of right"); *Morse v. Ranno*, 32 Vt. 600 (1860)(discussing prescriptive rights over roadways).[3]

### *Defendants' Motion re Proof of Obstruction*

As Plaintiff Bruce Kirkland acknowledged in his deposition, he cannot presently prove through first-hand knowledge that Defendants are responsible for the materials blocking Gowing Road. By their affidavits, Defendants deny placing those materials across the roadway. However, Plaintiffs insist there are substantial inferences that Defendants are responsible for placing the materials close to the junction of the Gowing Road and what is claimed to be Petty Road, based upon Defendants' actions elsewhere on Petty Road. The Court concludes there are factual questions here that defeat summary judgment on this issue. While it is generally true that a movant who does not bear the burden of persuasion at trial is entitled to summary judgment where the opponent lacks evidence to support his allegation, see *Ross v. Times Mirror, Inc.*, 164

---

[3] "[T]he mere act of leaving the space in front of his house and between that and the highway, open, as unenclosed ground, without any other act tending to show a dedication of it to the public use, would not of itself constitute a dedication of it to the public use, and deprive the plaintiff of the right to enclose it; but that if the jury should find that the public had appropriated it, or any part of it, to their use for a highway, and had continued to use it as such for a space of fifteen years or more, then, to the *extent* to which they had so used it, the public would have acquired the *right* to use it, and the plaintiff would have no right to fence or enclose it, so as to prevent or interfere with the use of the same by the public, as they had been accustomed to use it during such period of time; that to vest this right in the public, on the ground of use alone, the jury must find that the public had, during such period, continued to use it for the ordinary purposes of a highway… It is claimed that a dedication may be shown by a possession by the public for less than fifteen years. This is unquestionably true when the enjoyment by the public is accompanied by other acts and circumstances showing an intent on the part of a donor or grantor to make a dedication. Thus, where the owner of land opens a street through his premises, sells building lots and induces others to buy and build on the street, a much shorter possession than fifteen years would suffice to establish the dedication. In such case it would be fraudulent in the owner, after having induced others to act upon the faith of the street's being appropriated to public use, then to attempt to defeat the public use. So where papers, writings, or deeds defectively executed evince the intent to make a dedication of land to the public, a corresponding possession of less than fifteen years may sometimes suffice. Cases of this kind go much upon the ground of proof of an actual *intent* to make the dedication, and that upon the faith of the supposed dedication the public or individuals have relied, and made investments, or erected buildings whose values would be impaired by the withdrawal of the land from public use." *Id.*

5

Vt. 13, 18 (1995), more latitude is afforded where "knowledge of the events lies exclusively with the moving party." *Barbargallo v. Gregory*, 150 Vt. 653, 653 (1988)("Summary judgment may be particularly inappropriate where knowledge of the events lies exclusively with the moving party"). The Court concludes this is such a case, and denies summary judgment on the issue.

**WHEREFORE** it is hereby **ORDERED:** The cross-motions for partial summary judgment are **DENIED.**

Dated and signed electronically at Newfane this 28th day of February, 2014.

John P. Wesley
Civil Division Judge